IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORA J. STANLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. 05-1414 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Nora J. Stanley and Defendant Michael J. Astrue, Commissioner of Social Security.[1]   Plaintiff seeks review of a final decision by the Commissioner terminating payment of supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.   For the reasons discussed below, Plaintiff's motion is denied and Defendant's motion is granted.

### II.   BACKGROUND

Plaintiff Nora Stanley began receiving SSI benefits following

---

[1]   Pursuant to Fed. R. Civ. P. 23(d)(1), Michael J. Astrue, who became Commissioner of Social Security on February 12, 2007, is substituted for Jo Anne B. Barnhart as appellee in this action; see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

the December 19, 1997, decision of an Administrative Law Judge ("ALJ") that she was unable to maintain substantial gainful employment as a result of her morbid obesity and asthma. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 5, "Tr.," at 171-179.) Pursuant to Social Security regulations, Ms. Stanley underwent periodic re-evaluations to determine if her medical conditions had improved sufficiently that she was able to work. *See*, in general, 20 C.F.R. §§ 416.988-416.998.

Ms. Stanley was examined on December 3, 2003, by a state agency medical consultant, Dr. Darrell Donley, who concluded her conditions were not sufficiently severe to preclude her from working. (Tr. 280-286.) She also underwent a pulmonary function test on December 16, 2003, which was normal and showed that improvement "actually appears to have occurred" when compared to a similar study performed on December 6, 1994. (Tr. 303-313.)

On January 13, 2004, Ms. Stanley was advised that her last SSI benefit payment would be made in March 2004 inasmuch as a review of her medical records showed she was no longer disabled as of January 2004. (Tr. 185-187.) She appealed the decision, claiming that her asthma was "totally out of control" and her medication did not work for her migraine headaches. (Tr. 188.) On April 23, 2004, Ms. Stanley was interviewed by a Social Security hearing officer who also concluded that her conditions were improved to the point she

could perform substantial gainful employment and recommended that benefits be terminated.  (Tr. 193-209.)

Again Ms. Stanley appealed, this time seeking a hearing before an ALJ.  A hearing was held on March 14, 2005, before the Honorable Donald T. MacDougall at which Plaintiff was represented by counsel. On May 23, 2005, Judge MacDougall found that Ms. Stanley was not disabled and affirmed termination of her benefits.  (Tr. 13-24.) The Social Security Appeals Council declined to review the ALJ's decision on August 19, 2005, finding no error of law or abuse of discretion and concluding that the decision was based on substantial evidence to support the ALJ's findings.  (Tr. 5-8.) Therefore, the May 23, 2005, opinion became the final decision of the Commissioner for purposes of review.  42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), citing Sims v. Apfel, 530 U.S. 103, 107 (2000).  Plaintiff filed suit in this Court on October 26, 2005, seeking judicial review of the ALJ's decision.

## III.  JURISDICTION

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

## IV. STANDARD OF REVIEW

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake de novo review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the

decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## V.  **LEGAL ANALYSIS**

### A.  Regulations Concerning Termination of Benefits

Unlike the usual case appealed to a district court which involves denial of benefits by the Social Security Administration ("SSA"), Ms. Stanley is appealing the termination of benefits which were previously granted. In such a case, the usual five-step evaluation plan outlined in 20 C.F.R. § 416.920(a)(4) does not apply. The ALJ instead undertakes a seven-step analysis to determine if the claimant continues to be disabled. The claimant continues to receive benefits if the ALJ determines at any point in the analysis that there is substantial evidence from which to conclude the claimant is still unable to engage in substantial employment.[2] The questions to be addressed by the ALJ are the following:

(1) Does the claimant suffer from an impairment which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings")?

---

[2] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis." "Gainful work activity" is the kind of work activity usually done for pay or profit.

(2)   If the claimant's impairment does not satisfy a Listing, has there been "medical improvement" in the claimant's impairment(s) since the "point of comparison" as those terms are defined in the regulations?

(3)   If there has been medical improvement, is the improvement "related to the claimant's ability to do work," i.e., has there been an increase in her "residual functional capacity"[3] based on the impairment(s) present at the time of the most recent favorable medical determination?

(4)   If there has been no medical improvement (as determined at step 2) or if the medical improvement is not related to the claimant's ability to do work (as determined at step 3), do any of the identified exceptions to medical improvement apply? If not, the claimant continues to be disabled. If any one of the first group of exceptions[4] to medical improvement applies, the analysis continues at step 5. If any exception from the second group[5] applies, the claimant is no longer disabled.

(5)   If the medical improvement relates to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, are all the

---

[3]   Briefly stated, residual functional capacity or "RFC" is the most a claimant can do despite her recognized limitations. Social Security Ruling 96-9 defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

[4]   The first group of exceptions to medical improvement applies where substantial evidence shows: (1) the claimant has benefitted from advances in medical or vocational therapy or technology related to his or her ability to work; (2) the claimant has undergone successful vocational therapy related to the ability to work; (3) based on new or improved diagnostic or evaluative techniques, the claimant's condition is not as disabling as it was considered to be at the time of the most recent favorable decision; and (4) a prior disability decision was in error. 20 C.F.R. § 416.994(b)(3).

[5]   The second group of exceptions includes: (1) a prior determination or decision was fraudulently obtained; (2) the claimant does not cooperate with the SSA; (3) the claimant cannot be found; and (4) the claimant fails to follow prescribed treatment which would be expected to restore his or her ability to engage in substantial gainful activity. 20 C.F.R. § 416.994(b)(4). This second group of exceptions may be considered at any point in the analysis.

6

claimant's current impairments in combination "severe"
as that term is defined by the SSA? That is, what is the
impact of the claimant's current impairments in
combination on her ability to function? If the
claimant's current impairments in combination do not
significantly limit her physical or mental abilities to
do basic work activities, those impairments will not be
considered severe and the claimant will no longer be
considered disabled.

(6) If the impairment or combination of impairments is
severe, does the claimant have the RFC to perform past
relevant work? If so, the claimant is no longer
disabled.

(7) If the claimant is not able to perform work done in the
past, is there other work in the local, regional or
national economy the claimant can perform, given her RFC,
age, education, and past work experience?

20 C.F.R. § 416.994(b)(5); see also Reefer v. Barnhart, 326 F.3d
376, 378-379 (3d Cir. 2003).

Under this analysis, the claimant must first produce evidence

of continuing disability. At that point, the Commissioner bears

the burden of proving that the claimant's physical and/or mental

condition has improved to the point that she is no longer disabled.

Keegan v. Heckler, 744 F.2d 972, 975 (3d Cir. 1984).

B.    The ALJ's Determination

Judge MacDougall framed the issues as whether Ms. Stanley

continued to be disabled and, if not, when her disability ceased.

(Tr. 13.)  After correctly if briefly setting out the steps in the

analysis described above, the ALJ concluded that medical

improvement had occurred and that the improvement was related to

7

her ability to work.[6]  Although Plaintiff had no past relevant work experience, based on her residual functional capacity, age, education and work experience, the ALJ concluded there were jobs existing in significant numbers which she could perform. Consequently, he concluded Ms. Stanley was no longer disabled. (Tr. 14.)

Judge MacDougall first noted that Plaintiff was initially determined on December 19, 1997 (the "point of comparison" decision), to be disabled as a result of asthma and morbid obesity. (Tr. 15.)  At the time of this review, Ms. Stanley claimed she was disabled due to asthma, obesity, headaches, and back problems.  He summarized the medical evidence related to each of those purported disabilities (Tr. 15-17), then compared those medical findings to those at the point of comparison.  (Tr. 17.)  He concluded Ms. Stanley had shown medical improvement since that earlier decision, i.e., she had undergone a "significant" weight loss between

---

[6]  Medical improvement is defined as "any decrease in the medical severity of [the] impairment(s) . . . present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)."  Medical improvement is related to a claimant's ability to work when "there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities. . . . A determination that medical improvement related to [the] ability to do work has occurred does not, necessarily, mean that [the] disability will be found to have ended unless it is also shown that [the claimant is] currently able to engage in substantial gainful activity."  20 C.F.R. §§ 416.994(b)(1)(i) and (b)(1)(iii).

December 1997 and January 2004.  The ALJ noted that as a result of this decrease in her weight, she had also experienced a reduction in the marked shortness of breath which was previously associated with her obesity and improvement in her pulmonary function.  While the medical evidence showed Plaintiff's asthma continued to limit her to jobs which did not involve exposure to chemicals, odors, gases or dusty environments, the ALJ found no other environmental restrictions.  (Tr. 17.)

Judge MacDougall therefore concluded that as of January 2004, Ms. Stanley had the ability to perform a range of light work, whereas she had previously been found to be unable to perform even a limited range of sedentary work, i.e., her medical improvement was related to her ability to work.  (Tr. 18.)

Based on the medical evidence as of January 2004, the ALJ found that Ms. Stanley's severe impairments were asthma, type II diabetes mellitus, headaches and obesity.  (Tr. 18.)  Although she had also complained of lower back injury when examined by Dr. Donley in December 2003, no objective findings established a severe back impairment as of January 2004.  In a disability report dated May 6, 2004, Plaintiff reported she was experiencing depression and anxiety and at the hearing, she testified she had vision problems related to diabetes, a bone chip in her neck, a torn ligament in her left knee, nerve damage in her right hand, and a 20-pound increase in weight (from 206 to 226) since January 2004.  (Tr. 18.)

The ALJ concluded that all of the claimed impairments which were not on record as of January 2004 would have to be considered in a new application for benefits.  (Id.)

In determining Ms. Stanley's residual functional capacity, the ALJ noted, appropriately, that he was required to consider her subjective symptoms.  He explicitly noted her claims of increased reliance on a breathing machine, increased headaches, decreased ability to care for herself, the need to lie in a dark, quiet room when her migraine headaches occurred, constant back pain and stiffness associated with sitting, and side effects related to her numerous medications.  (Tr. 18-19.)  He concluded however, that while the medical evidence "establishes a basis for a degree of pain and functional limitations" as of January 2004, the evidence did not support those limitations to the extent alleged by Plaintiff.  In particular, he noted that although she had medical insurance, Ms. Stanley had received very little medical treatment during the period in question, even for her asthma and associated breathing problems, nor were there objective medical findings to support her claims of back pain or the severity and frequency of migraine headaches. (Tr. 19.)

The ALJ concluded that the medical evidence as of January 2004 and in the months immediately thereafter supported the assessment of state medical examiners that Ms. Stanley was capable of a range of light work.  He limited that range, however, to those jobs which

10

would allow her to use a nebulizer during the work day and accommodate her alleged back pain. However, he also concluded that Plaintiff had failed to establish that migraine headaches or any other condition precluded her from performing this limited range of light work on a regular and continuing basis. (Tr. 21.)

Noting that Ms. Stanley had no past relevant work experience, the ALJ turned to the final step of the analysis at which point the burden of production shifts to the SSA to show that there are a significant number of jobs available in the national and regional economies which Ms. Stanley could perform. At the hearing, Tim Mahler, a vocational expert, testified that given Ms. Stanley's age,[7] her eleventh-grade education and lack of employment history, she was capable of performing such light jobs[8] as hand packer, inspector/checker, and labeler/marker. (Tr. 21-22.) Judge MacDougall thus concluded that a finding of "not disabled" was

---

[7] Ms. Stanley was 36 years old as of January 2004, making her a "younger" individual for purposes of the Social Security regulations. 20 C.F.R. § 404.1563(c) and § 416.963(c).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b). A person who is able to do light work is also assumed to be able to do sedentary work unless there are limiting factors such as loss of fine dexterity or the inability to sit for long periods of time. Id. The vocational expert testified that Ms. Stanley could perform sedentary jobs such as surveillance system monitor, small products assembler, inspector/checker and sorter/grader. (Tr. 22.)

appropriate as of January 2004.   (Tr. 22.)

## C.   Plaintiff's Arguments

Plaintiff concedes that the ALJ's conclusions at steps 1 through 3 of the continuing disability analysis were supported by substantial evidence. (Plaintiff's Brief in Support of Motion for Summary Judgment, Docket No. 9, "Plf.'s Brief," at 7.)   That is, she agrees neither her asthma nor her obesity was sufficiently severe to satisfy any of the Listings; that those conditions had improved; and that the medical improvement was related to her ability to work.   (Id.)   She instead focuses on the medical conditions she alleged in addition to her original impairments and argues that the ALJ erred at two points in his decision and that the Appeals Council erred during its review.

First, the ALJ  erred by failing to discuss in any meaningful way Plaintiff's migraine headaches and by failing to take into account the detailed report of her board-certified neurologist, Dr. Louis W. Catalano. (Plf.'s Brief at 15-19.)   Second, the ALJ erred by accepting the vocational expert's response to a hypothetical question which failed to mention Plaintiff's migraine headaches, depression or anxiety.   (Id. at 19-23.)   Finally, the Appeals Council erred as a matter of law by failing to find that evidence of Plaintiff's treatment for depression and anxiety, submitted as part of her request for review, was not "new and material" to her claim, particularly since that evidence was submitted to the ALJ

12

but was not made part of the record.  (Id. at 8-15.)  We address each of these arguments in turn.

1. *The ALJ's failure to consider evidence of Plaintiff's migraine headaches.*  When Plaintiff's claim was reviewed in late 2003, Ms. Stanley alleged that she continued to be disabled due to asthma, obesity, headaches and back problems.[9] (Tr. 185, 280.)  At the consultative examination conducted by Dr. Donley on December 3, 2003, Ms. Stanley reported a "history of daily migraine headaches for the last several years."  (Tr. 280.) She stated that the headaches required her to spend "several hours in bed lying in a dark room, in a quiet environment," and that symptoms included nausea, vomiting, and occasional blurring of her vision with the headaches.  (Id.)  She had been prescribed 15 mg of Topamax daily, which she reported was not effective.  (Tr. 280-281.)  Dr. Donley reported normal findings on the neurological examination, i.e., Ms. Stanley was alert and oriented and her cranial nerves II through XII were intact without deficit.  (Tr. 281.)

On July 20, 2004, Ms. Stanley sought treatment for her migraine headaches from Dr. Catalano.  According to his subjective findings, Plaintiff reported her migraine headaches began when she

---

[9]  Since Plaintiff raises no objections to the ALJ's findings with regard to her other physical problems, e.g., back, knee, neck and hand pain, vision problems, and type II diabetes mellitus, the Court concludes Plaintiff must agree with the ALJ's opinion that those impairments must be addressed in another application for benefits.

was a teenager, but had steadily increased in the past year.  Her symptoms were described as nausea, vomiting, lightheadedness, dizziness, photophobia, sonophobia, blurred vision with light flashes, and impaired concentration.  The pain was located on either side of her head, but was also generalized bilaterally from the frontal to the occipital region.  When experiencing headaches, generally on a daily basis for four to five hours, her only relief was to go to bed.   (Tr. 334.)

Dr. Catalano's neurological examination noted generally unexceptional mental status, cranial nerves, motor strength, deep tendon reflexes, Babinski signs, gait and station, cerebellar function, and sensory examination.  (Tr. 335.)  His impression was of "chronic progressive headache with transformed-complex migraine."  He started Ms. Stanley on a trial of 25 mg of Seroquel, daily, and increased her dosage of Topamax to 25 mg twice a day. (Tr. 335-336.)  Although Dr. Catalano also directed Ms. Stanley to undergo an electroencephalogram, keep a diary of her headaches, and follow up with her treating physician, the transcript of the proceedings contains no record of her having followed any of these instructions.  Moreover, despite Dr. Catalano's direction that she schedule a return office visit in October 2004, there are no other medical records which reflect continuing treatment.

Ms. Stanley stated at the hearing that she took Seroquel for insomnia (Tr. 52), but the drug is not listed among her current

14

medications as of February 17, 2005. (*See* Tr. 344-345.) The same list shows that her dosage of Topamax remained at 15 mg once a day. She testified she had stopped seeing Dr. Catalano because his office was too far away and she was instead being treated by Dr. Donald Hoffman. (Tr. 38.) There are no medical records from Dr. Hoffman in the transcript. Ms. Stanley also stated that although her "pretty severe" headaches were "unpredictable," could materialize without apparent cause, and sometime lasted for days, she had never been treated at a hospital for them. (Tr. 42-43.)

For someone who suffered from migraine headaches since she was a teenager, the medical evidence submitted in connection with her initial application for SSI benefits is curiously devoid of such reports. The Court has reviewed the documentation provided at Tr. 61-170 and finds only one mention of migraines at Tr. 137-138. Plaintiff was treated by Dr. Deborah Zdor-North on December 23, 1996, to whom she reported she had not experienced a migraine headache for three months; Dr. Zdor-North did not prescribe medication for migraines. (Tr. 151, 155.) Other medical records are equally devoid of references to severe headaches. In a letter to the Social Security Administration dated June 27, 2003, Plaintiff wrote that she expected to see Dr. Kamal R. Rastogi at the Neurological Institute of Western Pennsylvania on July 11, 2003. (Tr. 227.) There are no records from Dr. Rastogi in the transcript. Plaintiff's treating physician, Dr. Kishor E. Joshi of

15

Mountainview Medical Associates, noted reports of migraines during visits on September 30 and December 30, 2002. (Tr. 331, 328.) Significantly, neither of those visits was precipitated by the headaches themselves but rather by cold symptoms. At the December examination, Dr. Joshi recommended follow-up by "neurology." (Tr. 328.) There are no further medical records from Dr. Joshi or his associates at Mountainview until a report of "daily headaches" on January 23, 2004, nor is there any reference to the suggested follow-up with a neurologist which apparently did not occur for more than 18 months. Records for visits to Dr. Joshi on February 13 and March 26, 2004, do not mention headaches. (Tr. 352-354.)

Dr. Mina Patel treated Plaintiff on July 14, 2004, at which time Ms. Stanley reported she was experiencing "daily" migraine headaches, sometimes two a day. (Tr. 408.) Dr. Patel was skeptical of Ms. Stanley's reports, stating, "I really need to follow her very carefully before I believe her and right now I do not believe her and that is the way I feel about it." (Id.) It is significant to note that there were no reports of headaches in the narrative portion of Dr. Patel's report of a follow-up visit on September 22, 2004. (Tr. 412-414.)

The final evidence on which Ms. Stanley relies is a Pennsylvania Department of Public Welfare Employability Assessment Form in which Plaintiff stated she could not work, in part because she experienced "headaches [which] make me go to bed for hours at

a time." (Tr. 392.)  The form is signed by Dr. Manie Juneja and dated July 1, 2005, long after the ALJ had issued his decision in May 2005. (Tr. 393.)  There are no medical records to support Dr. Juneja's diagnosis of depression, asthma, uncontrolled migraines and epilepsy. (Id.)

Plaintiff argues that the opinion of a claimant's treating physician that she cannot return to work is entitled to substantial weight under Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981.) (Plf.'s Brief at 15.)  Here, however, there is no statement by any physician other than Dr. Juneja which in any way sheds light on Plaintiff's inability to work.  Dr. Juneja's July 2005 opinion is not only irrelevant to the period of disability under consideration herein, it is not supported by objective medical evidence. Nor is there any evidence that Dr. Catalano, admittedly a specialist in neurology, was a treating physician for Ms. Stanley, that is, someone who treated her on a regular basis over a period of time,[10] and he did not opine about her ability to work.  Nor is there any such conclusion on the part of Dr. Joshi, her treating physician.

---

[10] Social Security regulations identify three general categories of medical sources - treating, non-treating, and non-examining. 20 C.F.R. § 416.902.  Physicians, psychologists and other acceptable medical sources who have provided the claimant with medical treatment or evaluation and who have had an "ongoing treatment relationship" with him are considered treating sources.  A non-treating source is one who has examined the claimant but does not have an ongoing treatment relationship with him, for example, a consultative examiner who is not also a treating source.  Id.  Finally, non-examining sources, including state agency medical consultants, are those whose assessments are premised solely on a review of medical records.  Id.

17

Thus, we find this argument unpersuasive.

Plaintiff further criticizes the ALJ's decision for mentioning her headaches only in passing. (Plf.'s Brief at 17-19.) Her first objection is to a statement by the ALJ that Ms. Stanley "failed to establish any neurological impairment associated with her alleged headaches that satisfied the requirements of any of the impairments detailed in section 11.00." (Tr. 16.) Plaintiff argues that because Listing 11.00 does not mention headaches or migraine headaches, "it is difficult to even understand the ALJ's reference to this listing section as part of this discussion about migraines in the first place." (Plf.'s Brief at 17-18.)

As a threshold matter, we disagree that the ALJ gave only passing mention to Ms. Stanley's headaches. He mentioned them repeatedly in his decision, noting that "she went to bed a lot and . . . could not be around light or sound when she had a migraine;" she had reported in a statement of May 6, 2004, that "her headaches were worse than ever;" and he accurately summarized her testimony at the hearing with regard to her headaches. (Tr. 18-19.) Therefore, it cannot be said that he summarily rejected Ms. Stanley's testimony about the intensity and persistence of her headaches, nor about the effect they have on her ability to work. He did find, however, that her reports were not consistent with the medical findings. While an alleged symptom may not be rejected solely because there is no objective medical evidence to support

it, an ALJ may find a reported symptom not credible if it is inconsistent with evidence in the record. 20 C.F.R. § 416.929(c)(2)-(4); <u>Rutherford</u>, 399 F.3d at 554. Here, the ALJ concluded that the "evidence of record establishes a basis for a degree of pain and functional limitations associated with the claimant's impairments present as of January 2004, but it fails to support the disabling degree alleged by the claimant. The claimant's testimony regarding the degree of her limitations is not fully credible." (Tr. 19.) He went on to note that despite complaints of daily headaches, her activities of daily living as reported on August 13, 2003, were inconsistent with someone who had to spend hours a day lying in a dark, quiet room. (Tr. 20.) Therefore, we disagree with Plaintiff's assertion that Judge MacDougall failed to discuss her "actual complaint."

Second, we agree with Plaintiff that none of the entries in Listing 11.00, neurological impairments, directly addresses migraine or other chronic headache conditions. However, we do not accept Plaintiff's inference that this citation to the Listings constitutes error by the ALJ. We read the ALJ's statement that Plaintiff "failed to establish any neurological impairment associated with her alleged headaches that satisfied the requirements of any of the impairments detailed in section 11.00" to mean only that he had compared the medical record to the neurological impairments described in Listing 11.00 and determined

there was no reason to conclude that her headaches were a symptom of any of those impairments.

According to Ms. Stanley, the ALJ further erred when he stated that Plaintiff had "failed to establish a basis" for her migraines. She argues that the only medical opinion on the subject, that of Dr. Catalano, "irrefutably establishes" a basis for her headaches, as do her recurring complaints to her primary care physician. (Plf.'s Brief at 18-19.)

The question, however, is not whether Ms. Stanley suffered from migraine headaches but whether those headaches were so severe they would preclude her from substantial gainful employment. The mere presence of a condition is not sufficient to establish disability. *See* Alexander v. Shalala, 927 F.Supp. 785, 792 (D. N.J. 1995); Walker v. Barnhart, No. 05-2282, 2006 U.S. App. LEXIS 5719, *8 (3d Cir. Mar. 6, 2006). The severity of Plaintiff's migraines is evidenced only by her own testimony, but such subjective complaints cannot alone establish disability. Gantt v. Comm'r Soc. Sec., No.05-4655, 2006 U.S. App. LEXIS 27117, *6-*7 (3d Cir. Oct. 31, 2006), *see also* 20 C.F.R. § 404.929(a). And, as noted above, the lack of regular medical treatment for migraines prior to January 2004 and the extent of Plaintiff's activities of daily living led the ALJ to find her description of the debilitating effects of her headaches not to be entirely credible. As the reviewing court, we are required to give "great deference"

to the ALJ's credibility determination where, as here, the ALJ has articulated reasons supporting that determination. Horodenski v. Comm'r of Soc. Sec., No. 06-1813, 2007 U.S. App. LEXIS 2874, *16 (3d Cir. Feb. 7, 2007); see also Reefer, 326 F.3d at 380 (the reviewing court ordinarily defers to an ALJ's credibility determination because the ALJ is present at the hearing and can assess a claimant's demeanor.)

We conclude that the ALJ's determination that Ms. Stanley's migraine headaches, alone or in combination with her other impairments, were not sufficiently severe to preclude any substantial gainful activity is supported by substantial evidence. We therefore find that the ALJ did not err in this regard and Plaintiff's argument must fail.

2.      *The ALJ's flawed hypothetical question which failed to mention Plaintiff's depression, anxiety or migraine headaches:* Plaintiff argues that evidence of her treatment for depression and anxiety was "inexplicably" omitted from the medical evidence considered by the ALJ.    This omission was not brought to the attention of her counsel until she received the ALJ's decision, at which point, counsel promptly provided copies of those records to the Appeals Council.  (Plf.'s Brief at 19.)   Because the ALJ did not know of this treatment and did not incorporate the limitations on Ms. Stanley's ability to work caused by her depression and anxiety - or by her migraine headaches - the hypothetical questions

21

posed to the vocational expert at the hearing were necessarily flawed.  As a result, Mr. Mahler's opinion that Ms. Stanley could perform a range of light work available in the local and national economies could not provide substantial evidence to support the ALJ's ultimate decision.  (Plf.'s Brief at 19-22.)

We agree with Plaintiff that the hypothetical question posed by the ALJ at the hearing did not incorporate any limitations based on Ms. Stanley's depression, anxiety, or migraine headaches.[11]  We turn to first to her argument that the ALJ erred by failing to incorporate limitations based on her alleged mental conditions.

The earliest evidence of complaints of depression and anxiety seems to occur in the notes of the hearing officer who interviewed Ms. Stanley on April 23, 2004.  (Tr. 193-207.)  The hearing officer noted that she complained of depression due to her medical problems but was not receiving any medication.  He stated she had been treated at Chestnut Ridge Counseling Center, Inc. ("Chestnut

---

[11]    The ALJ asked:  "If we assume a person of the same age, education and work experience as the Claimant but assume a person who is limited to light work as that's defined in the Commissioner's regulations.  There would be no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling.  And . . . the person would need a clean air environment so that there would be no exposure to any significant levels of fumes, dusts, gasses, or other respiratory irritants.  And the person should be able to change positions briefly, and by briefly I mean just for a minute or two, at least every 15 minutes.  And the person should be able to use a nebulizer at breaks or lunch for up to 20 minutes at a time.  And use it at lunchtime and break for 20 minutes and the other break for 15. Would there be any jobs that such a person could do?"  (Tr. 54.)  The vocational expert testified there were a number of light and sedentary jobs such a person could do.  (Tr. 54-55.)

Ridge") "a few times within the past few months," but at the hearing "was able to understand questions and respond appropriately with no difficulties or limitations observed."   (Tr. 196.)

In an undated disability report associated with her appeal, Ms. Stanley did not mention depression or anxiety as either a long-standing condition or a new impairment.   (Tr. 220-226.)   She did not include any reference to mental health therapy, psychiatric treatment, nor medication.   In a similar report prepared on May 6, 2004, she reported that as of August 2003, she began suffering from depression and anxiety and had first been treated by a therapist at Chestnut Ridge in February 2004.   Again, there is no evidence of medication for depression or anxiety.   (Tr. 271-277.)   In the August 2003 daily activities report, there is no mention of limitations imposed by depression or anxiety.   (Tr. 233-241.) There was no mention of depression or anxiety in Dr. Donnelly's report (Tr. 280-286), nor in the December 2003 medical records from Uniontown Hospital (Tr. 287-313), those of Mountainview Medical Associates for the period September 2003 through January 2004 (Tr. 323-333), or in Dr. Joshi's records for February through March 2004 (Tr. 352-354.).

In a letter to the Appeals Council dated July 22, 2005, following the ALJ's decision affirming termination of benefits, Plaintiff's counsel noted that although Ms. Stanley's treatment records from Chestnut Ridge had been submitted to the Social

23

Security Office of Hearings and Appeals on October 13, 2004, they did not appear in the exhibits listed in the ALJ's decision.[12]  (Tr. 388.)  Counsel further noted that the ALJ had refused to consider evidence related to depression and anxiety because these conditions manifested themselves after January 2004 and, "without citing any authority, the ALJ concluded that any worsening of Claimant's condition would have to be addressed in a new application."  (Tr. 389.)  Plaintiff's counsel argued to the Appeals Council that "it is clear that the ALJ erred as a matter of law in refusing to consider Claimant's mental impairments," i.e., the regulations "plainly require that the ALJ consider all of Claimant's impairments."  (Tr. 390, *citing* 20 C.F.R. § 416.994(b)(5)(v), 20 C.F.R. § 416.920a, and Ramirez v. Barnhart, 372 F.3d 546, 551 (3d

---

[12]    We note that the SSA had reminded Plaintiff's counsel in a letter dated June 12, 2004, that "[b]ecause the hearing is the time to show the ALJ that the issues should be decided in your client's favor, we need to make sure that her file has everything you want the ALJ to consider.  *You and your client are responsible for submitting needed evidence.*"  (Tr.  213, emphasis added.)  The letter also stated that "[i]f you wish to see the evidence in your client's file, you may do so on the date of the hearing or before that date."  (Id.)  At the hearing on March 14, 2005, the ALJ twice asked counsel whether there was "other medical evidence in existence that's not in the record."  (Tr. 35-36; 59-60.)  Counsel responded that the medical evidence was complete except for the records of Dr. Owen Nelson who treated Plaintiff in September 2004 after she injured her hand (Tr. 355) and the emergency room records from March 3-8, 2005, where she had been treated for bronchitis.  (Tr. 358-384.)  As noted in the letter to Plaintiff's counsel prior to the hearing, the claimant is responsible for assuring that all evidence to support her claim of disability is provided to the ALJ before or at the hearing.  *See* Hollis v. Comm'r of Soc. Sec., No. 04-1868, 2004 U.S. App. LEXIS 24914, *8-*9 (3d Cir. Dec. 3, 2004) (it is claimant's burden at all but the last step of the analysis to produce medical records providing evidence of disability).

Cir. 2004).)

Plaintiff does not reiterate this precise argument in her brief in support of her motion for summary judgment, contending only that because the ALJ was unaware of the evidence of her mental limitations, the hypothetical question was flawed by omission of depression, anxiety and migraine headaches. (Plf.'s Brief at 19-22.)  Defendant, on the other hand, argues that the issue before the ALJ was whether Plaintiff's disability had ceased as of January 2004 and that impairments which subsequently developed were irrelevant and immaterial. (Defendant's Brief in Support of Motion for Summary Judgment, Docket No. 11, at 12, n.2 and 14-15.)  The Court agrees with Defendant.

The relevance of the Chestnut Ridge treatment records - and consequently, the issue of whether omission of mental health limitations caused the hypothetical question to be flawed — comes down to the meaning of the word "current."  It is clear in innumerable opinions that an ALJ considering whether an applicant for Social Security benefits is disabled will consider medical records from before the alleged onset date of disability, throughout the period in which the application is pending, up to and including the date of the hearing.  However, the Circuits are split on the question of whether the word "current" has the same meaning in continuing disability assessments.  In <u>Difford v. Sec. of Health & Human Servs.</u>, 910 F.2d 1316, 1319-1320 (6th Cir. 1990),

the Court held that if the claimant were disabled at the time of the hearing, his benefits should not be terminated even if he would not have been found disabled on the cessation date.   The Social Security Administration issued an acquiescence ruling[13] stating it would comply with <u>Difford</u> for cases pursued in the Sixth Circuit, but that its own interpretation of the Social Security Act was that the ALJ was to consider the claimant's impairments as of the cessation date.   *See* Social Security Acquiescence Ruling 92-2(6), dated March 17, 1992.   In September 1999, the Seventh Circuit held that the SSA's statement of existing policy in the acquiescence ruling was entitled to deference and followed its reasoning. <u>Johnson v. Apfel</u>, 191 F.3d 770, 775-776 (7th Cir. 1999).   The Ninth Circuit declined to precisely follow either of the previous decisions because in its case, the Court concluded the ALJ had erred by failing to consider certain evidence from after the cessation date because such evidence could have shed light on the severity of the claimant's impairment prior to the cessation date. <u>McNabb v. Barnhart</u>, 340 F.3d 943, 945 (9th Cir. 2003).   The Third

---

[13]   An acquiescence ruling is a statement by the SSA as to how it will apply decisions of the United States Courts of Appeals which are at variance with the Administration's own national policies.   *See* 20 C.F.R. § 416.1485.   When the Commissioner of Social Security does not seek further review of such a decision, or if the Government is unsuccessful on appeal, an acquiescence ruling is issued, describing the administrative case, the court decision, and the issue(s) involved.   The SSA then explains how it will apply the holding.   Such a ruling applies only to cases arising within the same Circuit as the decision issued by the Court of Appeals.   <u>Id.</u>

Circuit Court of Appeals has not spoken to this issue.[14]  We agree with the reasoning of Johnson and conclude that the ALJ did not err by failing to include in his hypothetical question evidence of impairments arising only after January 2004.

In Acquiescence Ruling 92-2(6), the Administration stated that it interprets the term "current" to

> relate to the time of the cessation under consideration in the initial determination of cessation.  In making an initial determination that a claimant's disability has ceased, SSA considers the claimant's condition at the time SSA is making the initial determination.  In deciding the appeal of that cessation determination, the Secretary considers what the claimant's condition was at the time of the cessation determination, not the claimant's condition at the time of the disability hearing/reconsideration determination, ALJ decision or Appeals Council decision. However, if the evidence indicates that the claimant's condition may have again become disabling subsequent to the cessation of his or her disability or that he or she has a new impairment, the adjudicator solicits a new application.

Acquiescence Ruling 92-2(b).

As the Court reasoned in Johnson, this interpretation is consistent with other provisions of the Social Security Act such as those which require an individual to file an application for a disability determination with respect to "any claimed period of disability."  Johnson, 191 F.3d at 774-775, *citing* 42 U.S.C. §§ 416(i)(2)(A) and (B).  Plaintiff herein applied for benefits based on her obesity and asthma when she filed her initial

---

[14]  *But see* Timar v. Sullivan, CA No. 90-3984, 1991 U.S. Dist. LEXIS 10516 (D. N.J. July 26, 1991), following Difford before the SSA issued its acquiescence ruling related to the latter case.

27

application and the SSA made a final determination in 1997 that she was disabled due to those impairments. When the continuing disability review was conducted to determine if her "current" medical condition had improved to the point that she could "now" engage in substantial gainful activity, the SSA determined that her disability had ceased as of January 2004. Pursuant to the SSA's general policy as stated by the ALJ (see Tr. 18), Ms. Stanley was required to file a new application for the disability which she now claimed as a result of migraine headaches, depression, anxiety, lower back, knee and hand pain, and diminished vision as a result of diabetes mellitus. Compare Johnson, id. at 775.

We conclude the ALJ did not err by failing to take into consideration evidence of Plaintiff's treatment for depression and anxiety, all of which dated from March 2004 at the earliest, some three months after the SSA determined that Plaintiff was no longer disabled. Similarly, although there was some evidence of migraine headaches before the cessation date which the ALJ considered in his decision, as well as treatment for such impairments after that date, the ALJ did not err by failing to incorporate that condition in his hypothetical question because the limited medical evidence did not support a conclusion that the headaches were as disabling as Ms. Stanley claimed. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (a proper hypothetical question must reflect "all of a claimant's impairments that are supported by the record"

28

in order for the response by the vocational expert to be considered "substantial evidence"); see also Rutherford, 399 F.3d at 554 (the ALJ is not required to submit to the vocational expert every impairment alleged by the claimant, but only those which have been medically and credibly established.)   Nor did the ALJ err by refusing to accept the response to the hypothetical question posed by Plaintiff's counsel which referred to migraine headaches.[15]   An ALJ does not err in rejecting a response to a hypothetical question incorporating limitations which are not supported by the medical evidence.   Lyons v. Barnhart, CA No. 05-104, 2006 U.S. Dist. LEXIS 26320, *22-*23 (D. W.Pa. Mar. 27, 2006), citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984).   Plaintiff's motion for summary judgment based on her argument that the hypothetical question was flawed must therefore be overruled.

3.   The Appeals Council erred as a matter of law by failing to find that evidence of Plaintiff's treatment for

_____

[15]   In a follow-up question, Plaintiff's counsel asked: "Assuming the first hypothetical with the restrictions that the Judge had outlined to you but also assuming, as documented in [Dr. Catalano's report], an individual who suffers migraine headaches every day and must lay [sic] down at times for four to five hours in a day.   Would work be available for such an individual?"   Mr. Mahler responded negatively.   (Tr. 57.)   As noted above, such a severe restriction is supported only by Plaintiff's subjective testimony which was rejected by the ALJ as not entirely credible.   We also note that Dr. Catalano's report does not indicate that Plaintiff must lie down "at times for four to five hours in a day," as stated in counsel's hypothetical question, but only that "her symptoms last four to five hours in duration."   (Tr. 334.)   Thus, counsel's question was an inaccurate representation of the medical record.   We further note that although counsel questioned Ms. Stanley about her mental health impairments (Tr. 49-51), he did not pose a question including such limitations.

*depression and anxiety was not "new and material" to her claim:* In her letter to the Appeals Council dated July 22, 2005, Plaintiff's counsel argued that the evidence of Ms. Stanley's treatment for depression and anxiety was "new and material" to her disability claim. (Tr. 386-391.) Plaintiff objects to the Council's "boilerplate sentence" in its letter denying her request for review which stated only that "[w]e found that this information does not provide a basis for changing the administrative law judge's decision" and contends that such a cursory and incomplete review requires remand. (Plf.'s Brief at 8-9, *citing* Tr. 6.)

Plaintiff argues accurately and at length regarding the scope of review this Court should apply in considering a claim that the Appeals Council erred failing to consider "new" and "material" evidence which was not submitted to the ALJ "for good cause." (Plf.'s Brief at 9-13; *see also* sentence six of 42 U.S.C. § 405(g) stating that remand is warranted "for good cause shown . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.") However, Plaintiff also notes that the evidence of her "mental health treatment at Chestnut Ridge Counseling Services is the <u>only</u> evidence relating to plaintiff's mental health condition" and goes on to state that the psychiatrist's initial evaluation did not occur until June 24, 2004. (<u>Id.</u> at 13 (emphasis in original); *see*

30

*also* Tr. 394-396.)

As Plaintiff agrees, evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." (Plf.'s Brief at 10, *quoting* Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).) "The materiality requirement means that the evidence must 'relate to the time period for which the benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" Woolfolk v. Comm'r of Soc. Sec., No. 03-2582, 2004 U.S. App. LEXIS 2205, *6 (3d Cir. Jan. 15, 2004), *quoting* Szubak v. Sec. of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Based on the analysis in the previous section where we concluded that the Commissioner of Social Security, pursuant to the Administration's own regulations, would not have considered evidence of Ms. Stanley's mental impairments for which she began receiving therapy in March 2004 at the earliest, we find this argument is also unavailing.

Plaintiff's motion for summary judgment is denied in its entirety. An appropriate order follows.

March ___ 8 ___, 2007

William L. Standish
United States District Judge

cc: Counsel of Record

31